IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID W. S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV75 |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff David W. S. ("Plaintiff"), proceeding *pro se*, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on January 5, 2022, alleging a disability onset date of May 1, 2021 in both applications. (Tr. at 14, 184-98.)[2] His applications were denied initially (Tr. at 70-76, 105-14) and upon reconsideration (Tr. at 77-94, 116-31). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at. 138.) On September 5, 2023, Plaintiff, along with his attorney, attended the subsequent telephone hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 14, 33-69.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 27-28), and, on December 4, 2024, the Appeals Council denied Plaintiff's request for review of this decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 1, 2021. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

Case 1:25-cv-00075-LAF-JEP   Document 11   Filed 02/24/26   Page 5 of 15

> headaches/migraines; sciatica; degenerative disc disease of the cervical spine; hypertension; right shoulder impingement/osteoarthritis; Baker's cyst of the right knee; anxiety disorder; and post-traumatic stress disorder (PTSD)[.]

(Tr. at 17.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 17-19.) The ALJ therefore assessed Plaintiff's RFC and determined that he could perform light work with the following, additional limitations:

> [Plaintiff] can do occasional climbing of ramps and stairs, with no climbing of ladders, ropes, or scaffolds; he can do frequent balancing and stooping; [Plaintiff] can do occasional kneeling, crouching, and crawling; he can do frequent reaching with the bilateral upper extremities, provided only occasional overhead reaching and overhead weight-bearing bilaterally; [Plaintiff] can do frequent handling, fingering, pushing, pulling, and use of hand controls with the bilateral upper extremities; he has the ability to wear tinted prescription lenses as needed when performing the assigned work; [Plaintiff] can have occasional exposure to vibration, atmospheric conditions, toxic and caustic chemical hazards, and high, exposed places; he can have exposure up to and including moderate noise; [Plaintiff] can do work needing little or no judgment to do simple duties that can be learned on the job or in a short period of time, usually within 30 days, and for which little specific vocational preparation and judgment are needed; he can do work requiring sustained concentration and persistence for no greater than approximately 2 hours at a time; [Plaintiff] can do work that is not frequently performed on an assembly line or at a similar production-pace; he can adapt to occasional changes to the work setting and the manner and method of performing the assigned work; [Plaintiff] can do work that frequently provides for two 15-minute breaks and one 30 minute break for each 8-hour shift worked, occurring at such times as directed by the employer; and he can have occasional interactions with supervisors, coworkers, and the public when performing the assigned work.

(Tr. at 19-20.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff's past relevant work exceeded his RFC. (Tr. at 26.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could

perform other jobs available in significant numbers in the national economy. (Tr. at 26-27.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 27-28.)

In his initial brief, Plaintiff enumerates three points under the heading "Statement of Claim." (Pl.'s Br. [Doc. #8] at 4-6.) As Defendant correctly notes, none of the points raised by Plaintiff identify an error in the ALJ's decision. First, Plaintiff states that his impairments have lasted longer than one year and that he has not worked during this time period. (Pl.'s Br. at 4-5.) As set out above, the ALJ agreed on these points and made findings to this effect at steps one and two of the sequential analysis, finding that Plaintiff had not engaged in substantial gainful activity since May 1, 2021, and that he had the listed severe impairments. Thus, there does not appear to be any issue as to this first contention.

Second, Plaintiff contends that his visual deficits should have been considered a severe impairment, rather than a non-severe impairment, as determined by the ALJ. (Pl.'s Br. at 5-6.) However, in the very next sentence, Plaintiff states that "[t]he visual deficits are caused by [his] cluster migraines," and cites medical evidence in support of this statement. (Pl.'s Br. at 6.) Notably, the ALJ included "headaches/migraines" among the eight severe impairments identified by the ALJ at step two of the sequential analysis (Tr. at 17) and proceeded to discuss the impact of Plaintiff's headache symptoms, along with the symptoms from all of his impairments, severe and non-severe, when assessing Plaintiff's RFC (Tr. at 17, 20-26). Thus, there is no basis for remand based on the failure to separately include visual deficits as a severe impairment.[5]

---

[5] In addition, the Court notes that the ALJ's analysis is consistent with, and supported by, with the evaluation of the Consultative Examiner, PA Bishop, who noted that Plaintiff "[s]tates that cluster migraines impact his vision" with "photophobia associated with migraines" but 20/30 visual acuity (Tr. at 439, 450, 451, 22.) This analysis is also consistent with the medical records, which do not reflect any visual acuity issues, other than

7

Case 1:25-cv-00075-LAF-JEP   Document 11   Filed 02/24/26   Page 7 of 15

Third and finally, Plaintiff notes as follows:

> (3) Closely approaching Advanced Age (50-54.)
> I was 49 when the case started and have been 50+ for 3 years which is most of the case. I am also uneducated and feel that should weigh heavily on the basis saying I can retrain for a new career. On page 26 no. (6) it states that the claimant is unable to perform any past relevant work.

(Pl.'s Br. at 6.)[6] Like Plaintiff's previous two arguments, the ALJ's decision expressly took these factors into account. In finding six of the ALJ's opinion, the ALJ found that Plaintiff was unable to perform any past work. The ALJ then made findings seven and eight, which explained that

> 7. The claimant was born on May 29, 1972 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age[.]
>
> 8. The claimant has a limited education.

(Tr. at 26) (internal citations omitted). The ALJ then went on to explain in finding ten that Plaintiff's "age, education, work experience, and [RFC]" were all considered by the vocational expert in determining what, if any, jobs Plaintiff remained able to perform. (Tr. at 26-27.) Because the ALJ specifically relied on this vocational testimony in making his adverse disability

---

Plaintiff's reports of blurry vision and photophobia during severe migraines. (Tr. at 23, 368, 495.) At the hearing, Plaintiff noted that "light and smells" were the primary headache sensitivities, but did not otherwise raise any vision issues. (Tr. at 54.) Moreover, in setting the RFC, the ALJ then specifically provided for Plaintiff "to wear tinted prescription lenses as needed when performing [his] assigned work," a restriction clearly designed to address visual needs. (Tr. at 19.)

[6] Plaintiff's Complaint reflects these same contentions. In his Statement of Claim, Plaintiff challenges the ALJ's decision as follows: "I am over fifty years old and was informed in court that due to my injuries I cannot do the jobs I have done most of my life. The state still insisted that I can change jobs and learn a new trade. Also don't have diploma." (Compl. [Doc. #2] at 3.)

8

finding at step five of the sequential evaluation process, as provided in 20 C.F.R. § 404.1566(e), the Court finds no basis for remand. (Tr. at 27-28.)[7]

In response to Defendant's Brief [Doc. #9], which highlights the lack of substantive errors identified in Plaintiff's opening brief, Plaintiff filed a Reply Brief [Doc. #10], in which he asserts that the ALJ's findings were not "supported by complete evidence." In full, Plaintiff argues as follows:

> The issue is that all substantial evidence is not addressed. For instance the loss of work due to migraines, skeletal injuries, and mental illness has limitations in the workplace. If you miss to[o] many days a month you will be fired. This applies to all jobs. Also the state [psychologist] can't make an informed decision based off of one visit. The state doctor that conducted the physical only had me walk short distance and stand, squat, squeeze, push, pull one short time each. Therefore I don't see how the state doctors decision could weigh so heavily in my case. My medical record shows that I have been diagnosed with cluster migraines and have spinal and skeletal issues. With this being said, I don't think the ALJ had all the information needed to make an informed decision. I would ask that the court take this into consideration.

(Pl.'s Reply Br. at 4.)

Despite his contention that the ALJ lacked all the pertinent information in his case, Plaintiff fails to identify what, if any, evidence was missing from the record or from the ALJ's analysis of it. Instead, Plaintiff broadly asserts that his impairments cause workplace limitations beyond those opined by the consultative examiners in his case. To the extent that Plaintiff argues that his multiple diagnoses require further limitations, the Social Security regulations clearly state that more than a mere diagnosis is required to establish the existence

---

[7] To the extent that Plaintiff contends that he should automatically be considered disabled based on his age and limited education and inability to return to his prior work, the Court notes that under the Medical Vocational tables, an individual "closely approaching advanced age" with limited education and no high school degree, capable of light unskilled work, with no transferable skills, is "not disabled" unless they are illiterate. Medical-Vocational Guidelines (the Grids), 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, § 202.10.

9

of an impairment, let alone to establish total disability. See 20 C.F.R. §§ 404.1521, 416.921 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). Rather, an ALJ must make a disability decision based on the claimant's case record as a whole.

Here, the ALJ analyzed Plaintiff's testimony and other statements, daily activities, treatment history spanning more than six years, objective medical findings, and medical opinion evidence at great length in reaching his decision. Contrary to Plaintiff's assertion, the ALJ did not rely "heavily" on the opinions of the consultative examiners—although the Act allows for such weight when warranted and properly explained. Instead, the ALJ considered the two consultative examinations performed by Brittney Bishop, PA, on October 29, 2022 and January 21, 2023. (Tr. at 22-23.) In her 2022 opinion, Ms. Bishop "noted no physical limitations of any kind." (Tr. at 22, 439-44.) The ALJ explained that although this opinion was "generally supported by her own findings,"

> it [was] inconsistent with the greater weight of the evidence, which indicated that [Plaintiff] does have physical limitations within the parameters of his [RFC]. Specifically, he has a longstanding history of migraine headaches and low back pain. Ms. Bishop did not adequately consider [Plaintiff's] subjective complaints of pain due to these conditions. Furthermore, an MRI of [Plaintiff's] cervical spine done on April 25, 2023 confirmed facet hypertrophy at the C4-C5 level with severe right neural foraminal stenosis. Some physical limitations are therefore warranted.

(Tr. at 22) (internal citations omitted).

Plaintiff returned to Ms. Bishop three months later for a second consultative examination. At that time, he reported increased sciatic and cervical pain compared to his previous exam as well as a dramatic increase in migraine frequency. (Tr. at 22, 23.) Upon testing, Plaintiff was unable to tandem walk or walk on his toes or heels—a change from his

10

prior examination—and his bilateral grip strength, knee extension and flexion, right hip and shoulder flexion, and the range of motion in his spine were also reduced, although not markedly so. (Tr. at 23, 450-57.) All other findings were within normal limits. Based on these findings, Ms. Bishop opined that Plaintiff would have moderate limitations in lifting and carrying, postural activities, and prolonged standing and walking. As with Ms. Bishop's previous findings, however, the ALJ found this opinion unpersuasive, explaining as follows:

> While [the opinion] is generally supported by [Ms. Bishop's] own notes, it is inconsistent with evidence that shows that [Plaintiff] is less limitation than his exam presentation. Examiners noted no gross neurologic deficits on December 8, 2022, and [Plaintiff's] extremity strength was 5/5 throughout. Physical therapists noted no red flag symptoms on February 1, 2023. Furthermore, objective findings on May 17, 2023 showed good function. Extremity strength was 5/5 throughout, [Plaintiff's] gait was intact, and he could tandem walk. He showed no focal neurologic or sensory deficits, and his coordination was normal.

(Tr. at 23-24) (internal citations omitted).

Similarly, the ALJ found the opinion of Plaintiff's psychiatric consultative examiner "not entirely persuasive." (Tr. at 24.) LaChaya Radcliff, a psychiatric nurse practitioner, evaluated Plaintiff on February 22, 2023. (Tr. at 24, 458-64.) Based on this evaluation and Plaintiff's self-reports, Ms. Radcliff opined that Plaintiff "could follow instructions, sustain attention and complete simple tasks." (Tr. at 24, 461.) She further posited that he "had no limits in retaining or following instructions," "no limits in sustaining attention and performing simple repetitive tasks," and "mild limitations in stress tolerance and in interpersonal capabilities." (Tr. at 24, 461-62.) In finding these opinions less than fully persuasive, the ALJ explained that

> [Ms. Radcliff's] conclusions regarding [Plaintiff's] ability to do simple tasks is supported by her own exam which showed normal concentration and thought

11

content. [Plaintiff's] daily activities also show that he can do simple tasks, as he is independent for self-care. However, the examiner did not adequately consider [Plaintiff's] complaints of anxiety. Therefore, some social restrictions are appropriate. Also due to combined symptoms of anxiety and PTSD, [Plaintiff] can only adapt to occasional changes in the work setting.

(Tr. at 24.)

Thus, the ALJ did not rely heavily or uncritically on the consultative examinations, but considered them thoroughly in the context of the record as a whole. Similarly, the ALJ's findings regarding the opinions of the non-examining State agency consultants further demonstrate the ALJ's commitment to taking both Plaintiff's subjective complaints and objective evidence favorable to Plaintiff into consideration when formulating the RFC. The State agency medical consultants at the initial and reconsideration levels opined that Plaintiff remained capable of medium work with postural limitations. The consultants also concluded that Plaintiff "must avoid even moderate exposure to noise, fumes and hazards." (Tr. at 25, 73, 82.) However, the ALJ noted (1) that the consultants failed to link their findings to the record evidence, and (2) that medium work was both "inconsistent with [Plaintiff's] subjective complaints of pain and severe headaches" and "inconsistent [with] imaging of [Plaintiff's] cervical spine" showing significant degenerative changes. (Tr. at 25.) The ALJ found similar fault with the opinion of the State agency psychological consultant, who determined that Plaintiff had no more than mild mental limitations. (Tr. at 25, 79-80.) In finding this opinion unpersuasive, the ALJ again noted the consultant's failure to (1) ground her findings in the record and (2) consider Plaintiff's subjective complaints. (Tr. at 25.) In addition, the ALJ noted that the consultant's findings were "not entirely consistent with nurse Radcliff's exam," in which Plaintiff demonstrated greater mental limitations. (Tr. at 25.)

A review of the RFC assessment itself reveals extensive limitations that are found not in the opinion evidence or even the treatment notes, but in Plaintiff's subjective complaints. Moreover, the limitations that do stem from the opinion evidence skew, whenever possible, in Plaintiff's favor, giving his testimony as well as his statements to providers the maximum benefit of the doubt. Added restrictions include light, rather than medium, work; limited overhead reaching and weight-bearing; limited handling, fingering, pushing, pulling, and use of hand controls; the ability to wear tinted prescription lenses as needed; limited exposure to vibration, atmospheric conditions, chemical hazards, high, exposed places, and moderate noise; and numerous mental limitations to account for issues with social interaction, concentration, persistence, remembering and applying information, and adapting to change. (Tr. at 19-20.) Plaintiff fails to suggest what, if any, additional limitations he requires or what overlooked or omitted evidence supports such additions.

The only possible error identified by Plaintiff involves absenteeism. Plaintiff states in his Reply Brief that, "If you miss to[o] many days a month you will be fired." (Pl.'s Reply Br. at 2.) To the extent Plaintiff contends that his impairments may cause him to miss work so often as to be work-preclusive, he again points to no evidence that this is the case. At both his consultative examinations and at his hearing, Plaintiff reported that he experienced migraines at least once a week, and that they have "caused him to miss quite a bit of work" in the past. (Tr. at 21, 22, 23, 54-55.) However, he also reported that "Imitrex and Topamax relieve [his] headaches if taken soon enough," and that, even when not taken immediately, they begin to help after about two hours. (Tr. at 21, 55.) Moreover, Plaintiff testified that the migraines are "triggered by strong smells like fuel and perfumes" and were exacerbated by

13

light and noise. The ALJ accounted for these complaints with RFC restrictions including the use of tinted prescription lenses and limited exposure to vibration, atmospheric conditions, chemicals, and noise. (Tr. at 19.) In addition, Plaintiff reported to providers in December 2022—more than a year and a half after his alleged onset date—that he had been "headache-free for several years," before developing a long-lasting headache two weeks ago. (Tr. at 22-23, 495, 502.) At that time, the provider noted that Plaintiff was not currently taking Imitrex or Topamax. (Tr. at 495, 502.)[8] Overall, evidence of Plaintiff's long stretches without headaches and good symptom control with medication amply supported the ALJ's finding that absenteeism due to frequent migraines did not preclude all work activity during the time period at issue, particularly when coupled with RFC limitations designed to avoid headache triggers in the first instance.

Whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether substantial evidence supports the ALJ's decision. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). Here, the ALJ reviewed the medical evidence, Plaintiff's testimony and his reports to his providers, Plaintiff's activities of daily living, and the opinion evidence, and sufficiently explained his analysis. While Plaintiff disagrees with the

---

[8] On December 8, 2022, Plaintiff indicated that he was not taking these medications because he lacked insurance. (Tr. at 502.) However, on December 30, 2022, he reported that he was not taking these medications because he had not had headaches for several years. (Tr. at 495.) Notably, prior to these December 2022 visits, Plaintiff's most recent prior medical treatment records for headaches were from Spring 2019, over three years earlier. (Tr. at 21, 361-77.)

14

ALJ's determination, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ provided sufficient analysis to allow the Court to follow his reasoning, and there is sufficient evidence to support the ALJ's determination. Accordingly, the Court finds no basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #8] be DENIED, that Defendant's Dispositive Brief [Doc. #9] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 24th day of February, 2026.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge